Darian Stanford, OSB No. 994491
  Direct Dial:  503.802.2028
  Fax:  503.274.8779
  E-Mail:  darian.stanford@tonkon.com
Steven Olson, OSB No. 003410
  Direct Dial: 503.802.2159
  Fax: 503.972.3859
  E-Mail: steven.olson@tonkon.com
Haley Morrison, OSB No. 154972
  Direct Dial: 503.802.2121
  Fax: 503.972.3798
  E-Mail: haley.morrison@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue
Suite 1600
Portland, OR 97204-2099

	Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **M. J. BURNETT,** | Civil No. 6:18-cv-1761 |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **NORTHWEST CHRISTIAN UNIVERSITY,** | |
| Defendant. | |

	Plaintiff M. J. Burnett complains against Defendant Northwest Christian University ("NCU") as follows:

PAGE 1 -  COMPLAINT

## INTRODUCTION

1.      In Fall 2016, Plaintiff began college as an eager and optimistic NCU freshman whose speed and skill had earned him a partial athletic scholarship.  But Plaintiff's time at NCU terminated early because, near the end of his first semester, NCU expelled Plaintiff for alleged sexual misconduct.  Plaintiff does not know details of the allegations, because NCU never told him.  Plaintiff was unable to speak to witnesses because NCU forbade him from doing so.  NCU's questioning of the witnesses it interviewed was severely flawed, and it disregarded testimony from witnesses that exonerated Plaintiff and undermined the accuser's credibility.  NCU never told Plaintiff the evidence against him, and it never gave him any sort of hearing.  Plaintiff never had a chance.

2.      These allegations about NCU's actions are not attorney bluster—they are findings of the United States Department of Education's Office of Civil Rights ("OCR"), which found sufficient information of NCU's violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 ("Title IX") to investigate.  OCR's investigation demonstrated that NCU treated Plaintiff unfairly based on gender, but OCR focused on remedying the rampant Title IX problems at NCU rather than on providing a remedy for the harm to Plaintiff.

3.      This case provides Plaintiff with his remedy.  Post expulsion, Plaintiff left NCU broken and despondent.  His relationship with his family has suffered.  Opportunities to further his education and advance his desired career have evaporated because of the black mark that NCU wrongfully affixed to him.  NCU can and should fix its rampant Title IX problems, but it also must be held responsible for what it did to Plaintiff.

## SUBJECT MATTER JURISDICTION

4.      Subject matter jurisdiction is based on the existence of a federal question under 28 U.S.C. § 1331.  As shown more fully in this Complaint, this case arises under Title IX.

/////

/////

PAGE 2 -  COMPLAINT

## VENUE

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Defendant resides in the district as well as under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the district.

## PARTIES

6. Plaintiff is a former student at NCU.

7. NCU is a private, evangelical Christian institution of higher learning in Eugene, Oregon with an approximate annual tuition in 2017 of $28,500 and total enrollment of less than eight hundred (800) students. It receives federal financial assistance and is therefore subject to laws such as Title IX.

## FACTS

8. Plaintiff graduated high school in 2016 and enrolled at NCU that fall on a partial athletic scholarship. His outgoing personality allowed him to form a good circle of friends quickly, and that circle expanded through his participation in NCU's choir.

### Plaintiff Accused on December 12, 2016

9. On December 12, 2016, as the first semester of his freshman year was coming to an end, Plaintiff received a call from Greg Brock, NCU's Director of Residence Life and Social Services and subsequently (2017-2018 academic year) its Title IX director. Mr. Brock asked Plaintiff to come to the NCU Student Life Office around 3pm.

10. When Plaintiff arrived, Mr. Brock and another NCU official informed Plaintiff that a female student had accused Plaintiff of sexual misconduct, claiming that Plaintiff had pushed her against a wall, touched her on the buttocks, and kissed her and that two friends of Plaintiff captured the incident on video. The accuser further alleged that Plaintiff had also stalked her on a night that Plaintiff had a choir performance. Mr. Brock made it clear from the outset that, in his mind, Plaintiff was already guilty.

/////

11. Shocked, Plaintiff denied everything or even knowing the accuser. Plaintiff asked to view the alleged video (no such video existed) and/or to speak to witnesses, but Mr. Brock refused and further instructed Plaintiff not to speak to anyone about the allegations. Mr. Brock said that NCU would finish its investigation (an investigation with a pre-determined conclusion) and let Plaintiff know the results.

12. Plaintiff's protestations—the charges were false; he did not understand the accusations and had done nothing wrong; friends and the NCU choir director could account for his whereabouts at any relevant times—fell on deaf ears. When Plaintiff asked for police to investigate or to let him take a polygraph, Mr. Brock said that such tests are unreliable because "boys like you" can manipulate results. The entire meeting lasted approximately thirty minutes. While Plaintiff was confused and crestfallen, he still believed that the truth—his innocence—would ultimately prevail.

13. The students who allegedly videoed the non-existent incident denied everything as well and volunteered their respective cell phones to Mr. Brock and NCU, but Mr. Brock and NCU made it clear that they were not interested in evidence that exonerated Plaintiff or that undermined the accuser.

14. The following late afternoon, Plaintiff's father emailed Mr. Brock with multiple concerns about NCU's actions. Mr. Brock gave a cursory response—that NCU's investigation was ongoing and that he would provide more information at a later time.

15. Mr. Brock emailed Plaintiff early in the morning on December 14, 2016 and asked him to stop by the NCU Student Life office at 11am. However, Mr. Brock subsequently cancelled. It was not until 4:21pm that day that Mr. Brock emailed Plaintiff to apologize and promised to contact him the following day. Shortly thereafter, around 4:48pm, Plaintiff texted his father that "They really aren't telling my [sic] anything and I'm getting super frustrated."

16. On December 15, 2016, Mr. Brock called Plaintiff, but the conversation was nothing more than Mr. Brock seeking confirmation of the accuracy of interview notes from their

initial December 12 meeting. The call lasted less than five minutes. Again, Mr. Brock provided no additional details about the charges, the witnesses, or the evidence, if any, against Plaintiff. This call was the last communication NCU had with Plaintiff prior to expulsion.

### Expelled on December 16, 2016

17. Mr. Brock called Plaintiff back into the NCU Student Life Office on December 16, 2016. Joined this time by NCU Vice President for Enrollment and Student Development Michael Fuller, Mr. Brock informed Plaintiff of NCU's decision to expel Plaintiff, who had until noon the following day to remove himself from campus.

18. A corresponding December 16 letter from Mr. Fuller noted that Plaintiff was found more likely than not to be "is responsible for sexual harassment and sexual assault in violation of and defined by University policy *** and as such University is formally placing you on University Expulsion." Plaintiff left campus in shock, sadness and shame.

19. Neither Mr. Brock, Mr. Fuller, nor anyone at NCU ever told Plaintiff what evidence there was against him or explained the charges in appropriate detail. Plaintiff never received a hearing and never had a chance to defend himself. From day one, NCU decided he was guilty.

20. Plaintiff's father wrote Mr. Fuller on January 15, 2017 to challenge NCU's actions and the nature of the investigation: no due process, no witnesses, no specificity to allegations, no hearing, no investigation of alibi, etc.

21. NCU, through Mr. Fuller, responded by letter on February 1, 2017. NCU's letter is full of misinformation—that Plaintiff was interviewed twice (he was not); that all witnesses were contacted and considered (they were not).

22. NCU's 2016-2017 Student Handbook articulates its alleged policies regarding sexual harassment, stalking, sexual assault and Title IX. As detailed below, such policies were deficient, and NCU failed to follow what was actually written.

/////

**Intervention and Investigation by the U.S. Department of Education, Office of Civil Rights**

23. As his pleas of innocence and for due process fell on deaf ears at NCU, Plaintiff sought relief elsewhere—from the federal government. The mission of OCR is to "ensure equal access to education and to promote educational excellence through the nation through the vigorous enforcement of civil rights." OCR enforces federal civil rights laws that prohibit discrimination, including but not limited to Title IX and discrimination based on gender or sexual stereotyping. OCR does not investigate every complaint. Only complaints that contain sufficient evidence of a federal civil rights violation are investigated.

24. OCR has issued specific directives to universities such as NCU for fulfilling Title IX requirements, generally captured in three relevant documents: (1) Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students or Third Parties dated January 19, 2001; (2) the "Dear Colleague" letter authored by OCR Assistant Secretary for Civil Rights Russlyn Ali and dated April 4, 2011; and (3) the "Questions and Answers on Title IX and Sexual Violence" authored by OCR Assistant Secretary for Civil Rights Catherine E. Lhamon and dated April 29, 2014 (collectively "OCR's Directives").

25. In relevant part, OCR's Directives require the adoption and publication of specific grievance procedures providing for prompt and equitable resolution of complaints and for adequate, reliable and impartial investigation of complaints, including the opportunity to present witnesses and evidence.

26. Plaintiff filed a Title IX complaint against NCU with OCR on February 17, 2017.

27. On April 6, 2017, approximately two months after Plaintiff filed the complaint, OCR Equal Opportunity Specialist Mark Farr informed Plaintiff via letter that "the allegation raises a possible violation of Title IX" and therefore OCR would investigate. The matter became OCR Reference No. 10172115.

/////

/////

28. On August 15, 2017, OCR Supervisory Attorney Paul Goodwin announced via letter to NCU President Dr. Joseph D. Womack that OCR was discontinuing its investigation because OCR and NCU had entered into a Voluntary Resolution Agreement (the "VRA").

29. In short, NCU agreed in the VRA to the following: (1) reviewing and revising its policies, procedures and practices that address complaints of sex discrimination to insure that complainants and respondents have a prompt and equitable grievance process; (2) providing training to its Title IX coordinators and other employees involved in investigating, adjudicating and resolving complaints of sex discrimination; and (3) identifying an impartial individual to conduct an independent investigation of the Title IX complaint from Plaintiff.

30. The August 15, 2017 letter specified how NCU's conduct appeared to violate Title IX: "Title IX at 34 C.F.R. § 106.31(a) requires that a recipient may not, on the basis of sex, exclude anyone from participation in, deny anyone the benefits of, or subject anyone to discrimination under any educational programs or activities operated by the recipient. In order to meet the requirements of this regulation, recipients must provide a prompt and equitable grievance process for investigating complaints of sex discrimination, including sexual harassment. OCR's review of the university's submitted documents raised concerns about the equity and thoroughness of the university's response to the complaint against the student."

31. The August 15, 2017 letter then set forth OCR's specific concerns regarding NCU's treatment of Plaintiff: (1) Plaintiff did not have sufficient information about the complaint allegations to fully respond; (2) the interview questions that NCU asked of the various witnesses were insufficient to obtain necessary information; (3) NCU did not interview all relevant witnesses; (4) Plaintiff was not informed that he could present witnesses or additional evidence; (5) NCU's investigative report did not include information essential for a thorough investigation and an equitable determination, such as the date of the incident; (6) NCU declined to investigate a stalking allegation the accuser made against Plaintiff that may have undermined her credibility; and (7) NCU's investigation focused on unrelated and irrelevant matters involving Plaintiff.

32.     Over a year after the August 15, 2017 VRA, NCU has still not completed the requirement of an independent review of Plaintiff's matter by an impartial evaluator. Plaintiff has been denied any sort of relief or justice from NCU and must turn again to the federal government (this Article III Court) for a remedy.

### The Harm that NCU Caused

33.     Expulsion from NCU has caused Plaintiff serious harm. A previously charismatic and outgoing young man became severely depressed upon leaving college. Plaintiff used to hunt, fish, and hang with friends; now, he rarely leaves the house. Plaintiff described his anguish to his father as "it constantly feels like my head is coming off."

34.     Plaintiff's expulsion has complicated attempts to continue his education, to obtain meaningful employment, or to achieve the career he wanted as a teacher/coach. The black mark of having been expelled from school for sexual misconduct is too much to overcome.

### Title IX at NCU

35.     NCU's Title IX violations extend far beyond Plaintiff. Multiple males accused of sexual misconduct by females at NCU over the past few years have been denied due process in NCU's "investigations." On at least one occasion and likely others, NCU had to reconsider and change its finding regarding a male defendant accused of sexual misconduct from guilt to innocence.

36.     Moreover, on at least one recent occasion when a male NCU student accused a female NCU student of sexual misconduct, NCU refused to conduct any sort of substantive investigation against the female student.

37.     During Plaintiff's matter, an NCU official and Title IX investigator commented that male students are "always guilty" when a female student makes a sexual misconduct accusation.

38.     This sort of toxic environment is why OCR ordered a comprehensive overhaul of NCU's Title IX policies and processes.

## CLAIMS FOR RELIEF: TITLE IX

39. Plaintiff re-alleges and incorporates the previous allegations.

40. Title IX provides in relevant part that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

41. As detailed further below, NCU has violated Plaintiff's rights under Title IX in each of the following general ways: (1) by failing to provide a prompt and equitable grievance process and failing to adhere to OCR requirements and NCU policies; (2) by conducting an investigation so gender-biased and fatally flawed that it led to an erroneous outcome; (3) by selectively enforcing Title IX requirements against males like Plaintiff and not females; (4) by acting with deliberate indifference to Plaintiff's rights under Title IX; and (5) by discriminating against Plaintiff under Title IX based on archaic assumptions about gender.

42. That NCU's actions are rooted in gender discrimination in violation of Title IX is demonstrated by at least the following:

- NCU disregarded the testimony of witnesses who exonerated Plaintiff and questioned the credibility of his accuser, including but not limited to ignoring evidence that the accuser's stalking allegation was provably false;

- NCU aggressively and inappropriately pursued an investigation leading to the expulsion of Plaintiff based on the testimony of a female accuser, but it declined to pursue or investigate the possible expulsion of the female accuser based on the testimony of Plaintiff and other witnesses that the female student was making false accusations. NCU's policy against false harassment allegations that states in relevant part, "Because false accusations *** can have serious effects on the persons accused, any false accusation will result in disciplinary action up to and including expulsion/dismissal from the University";

- An NCU official lied to Plaintiff about the existence of cell phone video that allegedly showed the incident;
- An NCU official told Plaintiff that Plaintiff was guilty before the investigation was completed;
- OCR, the federal entity specifically assigned to investigate Title IX violations, found sufficient evidence of Title IX violations to investigate Plaintiff's matter and execute the VRA;
- The VRA requires NCU to review and revise its sexual harassment policies to be certain they provide complainants and respondents with a prompt and equitable grievance process, including various minimum standards and safeguards;
- The VRA requires NCU to train its Title IX coordinators and all other employees involved in any manner in Title IX investigations on how to conduct reliable and impartial investigations;
- The VRA requires NCU to assign an impartial individual to properly investigate Plaintiff's matter;
- Multiple male students accused of sexual misconduct by females have been denied a prompt and equitable grievance process by NCU;
- Upon information and belief, NCU refused to conduct any sort of substantive investigation when a male student accused a female student of sexual misconduct and therefore NCU treats female student defendants more favorably than male student defendants;
- One of NCU's Title IX investigators commented during the investigation involving Plaintiff that males "are always guilty" when a female makes an accusation of sexual misconduct; and

- In such other ways as discovery, including but not limited to a comprehensive review of every sexual misconduct complaint at NCU and NCU's response, will reveal.

43. NCU's violations of Plaintiff's Title IX rights have caused him serious harm, including but not limited to the following:

- Depression;
- Damage to family relationships;
- Inability to further his education and the corresponding loss of future income;
- Inability to further his occupational career and the corresponding loss of future income; and
- In such other ways as discovery will reveal.

44. Title IX provides a private right of action and allows for any and all damages other than punitive damages. It also allows for the recovery of attorney fees.

45. Plaintiff is entitled to economic and non-economic damages in a specific amount to be determined at trial, but in no event less than $2.1 million.

## Count One: Title IX, Failure to Provide Prompt and Equitable Grievance Process or to Comply with Policies of OCR and NCU

46. Plaintiff re-alleges and incorporates the preceding paragraphs.

47. As detailed by OCR and as previously alleged, Title IX at 34 C.F.R. § 106.31(a) requires that NCU may not, on the basis of sex, exclude anyone from participation in, deny anyone the benefits of, or subject anyone to discrimination under any educational programs or activities operated by NCU. In order to meet the requirements of this regulation, NCU must provide a prompt and equitable grievance process for investigating complaints of sex discrimination, including sexual harassment.

48. In at least each of the following particulars, NCU deprived Plaintiff of his right to a prompt and equitable grievance process on the basis of gender in violation of Title IX.

- NCU failed to give Plaintiff sufficient information about the complaint allegations to allow him to fully respond;
- NCU failed to obtain necessary information from the limited witnesses that it did interview;
- NCU failed to interview all relevant witnesses;
- NCU refused to allow Plaintiff to present witnesses or additional evidence;
- NCU's investigative report did not include information essential for a thorough investigation and an equitable determination, such as the date of the incident;
- NCU never gave Plaintiff any sort of hearing;
- NCU declined to investigate a provably false stalking allegation the female accuser made against Plaintiff that would have undermined her credibility;
- NCU disregarded witnesses who exonerated Plaintiff and questioned the credibility of the accuser;
- NCU acted in a manner inconsistent with the policies in its 2016-2017 Student Handbook;
- NCU's investigation focused on unrelated and irrelevant matters involving Plaintiff; and
- In such other particulars as discovery shall reveal.

49. As detailed above and as will be further revealed by discovery, NCU violated Plaintiff's rights to a prompt and equitable grievance process under Title IX, under OCR Guidelines and under NCU's own policies.

50. NCU's actions caused damages to Plaintiff as alleged in paragraphs 43-45.

### Count Two:  Title IX, Erroneous Outcome

51. Plaintiff re-alleges and incorporates the preceding paragraphs.

/////

52. As detailed above, NCU's investigation regarding Plaintiff was so fatally flawed based on gender bias that it led to an erroneous outcome in the disciplinary proceeding. NCU should not have expelled or taken any action against Plaintiff.

53. NCU's actions caused damages to Plaintiff as alleged in paragraphs 43-45.

### Count Three:  Title IX, Selective Enforcement

54. Plaintiff re-alleges and incorporates the preceding paragraphs.

55. In at least each of the following particulars, NCU has demonstrated that it selectively enforces Title IX rights against male students:

- On at least one occasion, and likely others to be revealed by discovery, NCU declined to investigate sexual assault allegations made by a male student against a female student;
- NCU investigated and ultimately expelled Plaintiff based apparently on the testimony of a single witness, yet it declined to even investigate the female accuser for potentially filing a false harassment claim despite the testimony of multiple witnesses that suggested the female accuser's claim was false; and
- In such other ways as will be revealed by discovery.

56. NCU's actions caused damages to Plaintiff as alleged in paragraphs 43-45.

### Count Four:  Title IX, Deliberate Indifference

57. Plaintiff re-alleges and incorporates the preceding paragraphs.

58. In at least each of the following particulars, NCU and its officials have demonstrated deliberate indifference to Plaintiff's rights under Title IX:

- NCU officials informed Plaintiff that he was guilty before the investigation was even completed;
- NCU's investigation of Plaintiff was so shoddy and flawed that its officials necessarily acted with deliberate indifference towards his Title IX rights;

- Multiple male students accused of sexual misconduct by females at NCU over the past few years have been denied due process in NCU's "investigations"; and

- In such other ways as will be revealed by discovery.

59. NCU's actions caused damages to Plaintiff as alleged in paragraphs 43-45.

## Count Five:  Title IX, Archaic Assumptions

60. Plaintiff re-alleges and incorporates the preceding paragraphs.

61. In at least each of the following particulars, NCU's discriminatory actions have been based on archaic assumptions about gender roles in sexual assault or harassment matters:

- Multiple male students accused of sexual misconduct by females at NCU over the past few years have been denied due process in NCU's "investigations";

- On at least one recent occasion when a male NCU student accused a female NCU student of sexual misconduct, NCU refused to conduct any sort of substantive investigation against the female student.

- Upon information and belief, one of NCU's Title IX investigators commented that male students are "always guilty" when a female student makes a sexual misconduct accusation;

- NCU officials informed Plaintiff that he was guilty before the investigation was even completed; and

- In such other ways as will be revealed by discovery.

62. NCU's actions caused damages to Plaintiff as alleged in paragraphs 43-45.

## DEMAND FOR RELIEF

Plaintiff demands:

1. That Defendant pay damages in excess of the sum of $2.1 million.

2. That Defendant pay interest, costs and reasonable attorney's fees incurred by Plaintiff; and

3. For such other relief as the Court may allow.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims on which he has the right to trial by jury.

DATED this 3rd day of October 2018.

TONKON TORP LLP

By: */s/ Darian Stanford*
    Darian Stanford, OSB #994491

TONKON TORP LLP

By: */s/ Steven Olson*
    Steven Olson, OSB #003410

TONKON TORP LLP

By: */s/ Haley Morrison*
    Haley Morrison, OSB #154972

Attorneys for Plaintiff

040064/00001/9260457v1

PAGE 15 - COMPLAINT